```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────────
TEURY POTTER,

                    Plaintiff,           14 Civ. 4559 (JGK)

        - against -                      MEMORANDUM OPINION AND
                                         ORDER
CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.
────────────────────────────────────────
```

**JOHN G. KOELTL, District Judge:**

The plaintiff, Teury Potter, brought this action to seek review of a final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner determined that the plaintiff was not entitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

The plaintiff filed applications for DIB and SSI, alleging that he became unable to work because of autism and back pain. Both of his claims were denied. He then filed a written request for a hearing. After a hearing, the Administrative Law Judge ("ALJ") found that the plaintiff was not disabled and denied the plaintiff's claims. The Social Security Appeals Council declined review. The plaintiff then filed the complaint in this action.

The Commissioner filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The plaintiff filed an affirmation in opposition to

1

the motion. For the reasons explained below, the Commissioner's motion is granted.

I.

A court may set aside a determination by the Commissioner only if it is based on legal error or is not supported by substantial evidence in the record. See 42 U.S.C. §§ 405(g), 1383(c)(3); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Moreira v. Colvin, No. 13cv4850, 2014 WL 4634296, at *3 (S.D.N.Y. Sept. 15, 2014).

The definition of "disabled" is the same for DIB and SSI. See Barnhart v. Walton, 535 U.S. 212, 214 (2002). A claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (DIB); accord 42 U.S.C. § 1382c(3)(A) (SSI).

The Social Security Administration proscribes a five-step analysis for evaluating disability claims. "In essence, if the Commissioner determines (1) that the claimant is not working,

(2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002); see also 20 C.F.R. §§ 404.1520(a) (DIB), 416.920(a) (SSI).

The claimant bears the initial burden of proving that he is disabled. See Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). If the claimant satisfies the burden of proof through the fourth step, the claimant has established a prima facie case and the burden of proof shifts to the Commissioner at the fifth step. Id.

When employing this five-step process, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses of medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age and work experience." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)). The Commissioner should give the opinion of a claimant's treating physician controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic

techniques, unless it is "inconsistent with the other substantial evidence." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998); see also 20 C.F.R. §§ 404.1527(c)(2) (DIB), 416.927(c)(2) (SSI).

When determining an individual's residual functional capacity ("RFC") to perform basic work activities, the ALJ is required to take the claimant's reports of pain and other limitations into account. 20 C.F.R. §§ 404.1529(a) (DIB), 416.929(a) (SSI). The ALJ, however, is entitled to discredit the claimant's assertions if they are not consistent with "his physicians' observations and his own hearing testimony." Kessler v. Colvin, 48 F. Supp. 3d 578, 594-96 (S.D.N.Y. 2014). An "ALJ's credibility determination is generally entitled to deference." Selian v. Astrue, 708 F.3d 409, 420 (2d Cir. 2013) (per curiam).

**II.**

The administrative record contains the following facts.

The plaintiff was born in 1975. (Administrative Record ("A.R.") 101.) He is a high school graduate. (A.R. 143.) He worked as a cleaner at a race track from 1994 until 2005. (A.R. 36, 148.) He then worked part-time as a stocker at a supermarket from August 2006 to June 2010, when he was laid off. (A.R. 34-35, 148.) The plaintiff filed applications for DIB and SSI on July 8, 2011. (A.R. 101-16.) The plaintiff claimed his disability began on June 1, 2010. (A.R. 101, 108.)

The plaintiff completed a function report as part of his DIB and SSI applications. (A.R. 155-67.) With regard to his daily activities, the plaintiff stated that he lived alone without assistance and was able to travel by using public transportation; but he had difficulty managing his finances. (A.R. 157, 159-60.) The plaintiff complained that his disability affected his ability to talk, kneel and use his hands, but not his ability to lift, stand, walk, sit, climb stairs, or hear. (A.R. 161-62.) He stated that he could pay attention, cooperate with authority figures, and remember things, but that he could not follow spoken or written instructions. (A.R. 163-64.) The plaintiff also stated that beginning in 2010, his lower back pain started to affect his sleep and his ability to bend at work. But he never sought treatment for his back pain and taking Advil once a day could relieve that pain. (A.R. 164-66.) At a July 31, 2012 hearing, the plaintiff testified that he was able to hear what his attorney asked him. (A.R. 34.)

The plaintiff has been treated by several doctors from both Bronxcare and the Federation Employment & Guidance Service ("FEGS").

On August 31, 2011, Dr. Srinivasan Krishna, the plaintiff's treating physician at Bronxcare, diagnosed the plaintiff with bilateral hearing loss and referred him for an audiogram. (A.R.

246.) The audiogram revealed that the plaintiff retained 96% speech recognition in both ears. (A.R. 231.)

On September 12, 2011, Dr. Carole Marks, a physician at FEGS, issued a report. (A.R. 229.) Dr. Marks noted that a relative accompanied the plaintiff to the appointments and helped him answer questions, and concluded that the plaintiff needed a low stress work environment with a limited number of people. (A.R. 229.) Dr. Marks diagnosed the plaintiff with autism, adjustment disorder with depressed mood and mild mental retardation. (A.R. 229.)

On November 5, 2011, Dr. Charles Pastor at Bronxcare examined the plaintiff in a follow-up visit. (A.R. 232, 247, 245.) Dr. Pastor concluded that the plaintiff had a history of dyspepsia, autism, depressed mood, mild mental retardation and poor hearing. (A.R. 247.) He also noted that the plaintiff was medically cleared for hearing aids. (A.R. 232.)

On January 4 and February 8, 2012, the plaintiff was examined twice by Dr. Christopher Leggett at Bronxcare. (A.R. 235, 236.) Dr. Leggett observed that the plaintiff was calm, cooperative, and not in acute distress, but also noticed that the plaintiff had poor eye contact. (A.R. 235.) Dr. Leggett recommended that the plaintiff attend the Young Adults Institute, which specializes in developmental disability, and

6

described in a referral that the plaintiff was "thirty-six years old with autism and hearing loss." (A.R. 230.)

On March 10, 2012, the plaintiff was examined by Dr. Pastor at Bronxcare. (A.R. 233-34, 248.) Dr. Pastor's notes showed that the plaintiff had "no acute complaints," and that he had normal function for his gastrointestinal, musculoskeletal, and neurological systems. (A.R. 233-34.) Dr. Pastor provided the plaintiff with an unaddressed note on that day, stating that the plaintiff was under his care for autism, a major depressive disorder, mild mental retardation, dyspepsia and poor hearing in both ears, and that he was under the care of a psychiatrist and an ear, nose and throat ("ENT") specialist. (A.R. 249.)

In a letter dated August 7, 2012, Teresa Cadiz, a social worker assistant at Bronxcare, stated that the plaintiff had a history with autism and had been diagnosed with "sensuous hear loss asymmetric, [d]yspepsia and mood disorder." She wrote that the plaintiff "[wa]s in need to apply for SSI benefits." (A.R. 264.)

The plaintiff also went through several physical and mental consultative examinations.

On August 31, 2011, Dr. Ammaji Manyam performed an internal medicine examination of the plaintiff at the request of the Commissioner. (A.R. 206-09.) Dr. Manyam noted that the plaintiff had full muscle strength, full range of motion, normal reflexes

7

and sensations throughout his back, and full grip strength bilaterally. (A.R. 208.) A lumbosacral spine x-ray revealed that the plaintiff's spine was "relatively well maintained." (A.R. 210.) Dr. Manyam diagnosed the plaintiff with autism and occasional heartburn and opined that the plaintiff had no limitations for physical activity. (A.R. 208.)

On the same day, Dr. Arlene Broska performed a consultative psychiatric evaluation at the request of the Commissioner. (A.R. 201-04.) Dr. Broska noticed that the plaintiff was a poor informant, often answered questions in a nonresponsive manner, and might not always relate well with others. (A.R. 201-03.) But Dr. Broska also explained that the plaintiff was well groomed, and had normal gait, posture, and motor behavior. (A.R. 202.) The plaintiff's attention and concentration were intact and he had normal memory skills. (A.R. 203.) Additionally, the plaintiff could understand and follow simple instructions and could perform simple and complex tasks independently. (A.R. 203.) Dr. Broska diagnosed the plaintiff with a pervasive developmental disorder and recommended vocational support. (A.R. 204.)

On September 23, 2011, Dr. T. Andrews, a state agency psychological consultant, completed a Psychiatric Review Technique for the plaintiff. (A.R. 211-24.) Dr. Andrews concluded that the plaintiff's impairments were "medically

determinable," "not severe," and failed to satisfy the criteria for "[a]utism and other pervasive developmental disorders" listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.10. (A.R. 211, 220.) Dr. Andrews concluded that the plaintiff had mild restrictions in his activities of daily living, mild difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence or pace, and he never experienced any repeated episodes of deterioration of extended duration. (A.R. 221.)

The Social Security Administration denied both of the plaintiff's claims on October 5, 2011. (A.R. 54-59.) The plaintiff then filed a written request for a hearing on December 6, 2011. (A.R. 60.) The ALJ held a hearing on July 31, 2012, in which the plaintiff testified with the assistance of counsel. (A.R. 30, 34.)

On October 4, 2012, the ALJ applied the five-step sequential evaluation process and, in a thorough opinion, denied the application for DIB and SSI benefits. (A.R. 10-22.)

At step one, the ALJ found that the plaintiff had not engaged in any substantial gainful activity since June 1, 2010. (A.R. 12.) At step two, the ALJ found that the plaintiff's autism and pervasive development disorder constituted a "severe impairment." (A.R. 12.) At step three, the ALJ found that the plaintiff's impairment failed to meet or to be medically equal

9

to any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (A.R. 13.) Specifically, the ALJ found that the plaintiff's impairments did not satisfy the Paragraph B requirement for autistic disorder in § 12.10 of Appendix 1, because the plaintiff's impairment did not cause at least two "marked" limitations that Paragraph B required or any marked limitations and repeated episodes of decompensation, each of extended duration. (A.R. 13-14.)

The ALJ then found that the plaintiff had the physical RFC to perform work at "all exertional levels," with the nonexertional limitations that he 1) "should not have frequent contact with others" and 2) "cannot make complex work-related decisions or perform complex tasks." (A.R. 15.) The ALJ found that the plaintiff is able to understand, remember and carry out simple instructions, to maintain attention and concentration, and to hear normal conversations. (A.R. 19.)

At step four, the ALJ found that the plaintiff was capable of performing his past relevant work as a cleaner and as a stocker/packager at a grocery store, because the plaintiff's RFC identified no exertional limitations and the plaintiff had not developed new impairments after he was laid off from his last job. (A.R. 20-21.)

In the alternative, proceeding to step five, the ALJ also found that the plaintiff could perform a significant number of

other jobs in the national economy such as unskilled work at all exertional levels. (A.R. 21.)

The ALJ thus found that the plaintiff was not disabled within the meaning of the Social Security Act and denied both the DIB and SSI claims. (A.R. 22.) After the Appeals Council declined review on April 25, 2014, the decision of the ALJ became the final decision of the Commissioner. (A.R. 1-3.)

### III.

The Court reviews the ALJ's determination according to the same five-step process used by the ALJ. Substantial evidence supports the ALJ's determination that the plaintiff was not disabled under the Act.

The ALJ's determinations at step one and two—that the plaintiff was not currently engaged in substantial gainful activity and that he had a severe impairment—are not disputed by the Commissioner.

At step three, substantial evidence supports the ALJ's conclusion that the plaintiff's autistic disorder and developmental disorder did not meet or were not medically equal to the listed requirements in 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.10. (A.R. 13-14.)

To qualify as an autistic disorder or other pervasive developmental disorder under § 12.10, the conditions of the claimant must satisfy the criteria outlined in Paragraph A as

11

well as in Paragraph B of § 12.10. The Paragraph B criteria that the ALJ found dispositive require the conditions to result in "at least two" of the following: (1) "[m]arked restriction of activities of daily living;" (2) "[m]arked difficulties in maintaining social functioning;" (3) "[m]arked difficulties in maintaining concentration, persistence, or pace;" or (4) "[r]epeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 12.10. A mild to moderate limitation is insufficient to establish a marked restriction in one functioning area. See 20 C.F.R. §§ 404.1520a(c)(4) (DIB), 416.920a(c)(4) (SSI).

Substantial evidence supports the ALJ's conclusion that the plaintiff's impairment failed to satisfy the Paragraph B criteria because the plaintiff has no "marked" restrictions or limitations. (A.R. 13-14.).[1]

The ALJ correctly found that the plaintiff had no restrictions of activities of daily living by giving significant

---

[1] The plaintiff, who was represented by counsel at the administrative level, did not identify intellectual disability as an impairment. It is unlikely that the plaintiff qualifies as suffering from such a disability, because there is no evidence he satisfied any of the four possible conditions for that category. The plaintiff did not rely on others for his personal needs, nor is there evidence that the plaintiff's IQ is below 59. See 20 C.F.R. Pt. 404, Subpt. P, Appx.1 § 12.05(B). In addition, as explained below, there is no evidence of significant work-related limitations. And the plaintiff did not meet the limitations specified in the Paragraph B criteria of § 12.10. See id. § 12.05(C).

weight to Dr. Broska's report, Dr. Manyam's report, and the function report completed by the plaintiff. (A.R. 13.) Because the plaintiff could cook for himself, travel by himself, and bathe, groom, and dress himself, the ALJ correctly determined that the plaintiff was not restricted in performing daily activities. See Rosado v. Astrue, 713 F. Supp. 2d 347, 364 (S.D.N.Y. 2010) (finding a plaintiff had no restriction in daily activities because, among other things, "he [wa]s capable of doing his own cooking and shopping," and "was always extremely well groomed, neat and appropriately dressed"). The ALJ also properly discounted Dr. Marks' conclusion that the plaintiff needed substantial assistance performing daily activities. Her conclusions that the plaintiff had to be accompanied to his appointments and needed help answering questions were inconsistent with the evidence that the plaintiff went to the hospital alone in November 2011 and March 2012, and that he completed the function report by himself. (A.R. 155, 232-33); see also Schisler v. Sullivan, 3 F.3d 563, 567 (2d Cir. 1993) (holding that the weight of a treating physician's opinion depends partly upon the opinion's "consistency with the record as a whole").

    Substantial evidence also supports the ALJ's conclusion that the plaintiff's social limitations were at most mild to moderate. In his function report, the plaintiff stated that he

13

speaks with friends, (A.R. 161;) has no problems getting along with others, (id.;) and has no problems getting along with authority figures. (A.R. 163.) Dr. Broska noted that the plaintiff was a poor informant, (A.R. 201,) and that he might "not always relate adequately with others." (A.R. 203.) But she ultimately concluded that the plaintiff could deal with some stress and follow simple instructions. (A.R. 203.) Similarly, Dr. Leggett-a treating physician-noted the plaintiff had poor eye contact, but also explained that he was calm and cooperative. (A.R. 235.) See also Vargas v. Astrue, No. 10cv6306, 2011 WL 2946371, at *5, *12 (S.D.N.Y. July 20, 2011) (finding no marked restrictions even though the plaintiff was a "very poor informant," and she "frequently required repetition of questions").

With respect to concentration, persistence, or pace, the ALJ relied on the report of Dr. Broska and the plaintiff's answers in his function report. (A.R. 14.) The ALJ noted that the plaintiff had intact attention, concentration and memory skills, though, according to Dr. Broska, the plaintiff sometimes gave irrelevant answers. (A.R. 14, 201-03.) These limitations, as the ALJ correctly concluded, were at most mild to moderate. (A.R. 14.)

Lastly, the ALJ correctly noted that the plaintiff had never experienced any episodes of decompensation. (A.R. 14.)

Therefore, substantial evidence supports the ALJ's conclusion that the plaintiff had no "marked" restrictions or episodes of decompensation, and thus failed to meet the requirements in Paragraph B of § 12.10.

With respect to the plaintiff's RFC, the ALJ correctly found that the plaintiff was able to perform a full range of work at "all exertional levels" with two nonexertional limitations. (A.R. 15-20.)

Substantial evidence supports the ALJ's conclusion that the plaintiff had no exertional limitations. (A.R. 15.) An individual with no exertional limitations should be able to perform "very heavy work." 20 C.F.R. §§ 404.1567(e) (DIB), 416.967(e) (SSI). The plaintiff, in his function report, stated that he could lift objects weighing more than 100 pounds and frequently lifted objects weighing 50 pounds or more in his past jobs, showing his ability to perform "very heavy work." Id.; (A.R. 149, 156.) Additionally, according to Dr. Manyam's examination and Dr. Pastor's notes, the plaintiff had full musculoskeletal and neurologic function, (A.R. 208, 233,) and had intact hand and finger dexterity and grip strength. (A.R. 208.) The ALJ thus correctly found no exertional limitations. (A.R. 15.)

The ALJ also correctly found that the plaintiff had two nonexertional limitations, namely that he "should not have

frequent contact with others" and "cannot make complex work-related decisions or perform complex tasks." (A.R. 15.) The ALJ's finding was supported by medical evidence. Dr. Broska found that the plaintiff might not always relate to others, had difficulties with conversational speech, and often answered a question with "yes" instead of an answer. (A.R. 202.) Additionally, Dr. Andrews concluded that the plaintiff had mild difficulties in maintaining social functioning. (A.R. 221) The ALJ properly gave significant weight to these findings. See Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983) (holding that the report of a consultative physician may constitute substantial evidence). Dr. Marks, a treating physician, also concluded that the plaintiff needed a low stress work environment with limited people. (A.R. 229.)

    Additionally, the ALJ correctly ruled out the plaintiff's alleged back pain and hearing loss as nonexertional limitations. (A.R. 19.) Regarding the plaintiff's back pain, Dr. Pastor found no problem in the plaintiff's musculoskeletal and neurological systems in a follow-up visit. (A.R. 233.) And the 2011 lumbosacral spine X-ray showed that the plaintiff had an intact spine. (A.R. 210.) Regarding the plaintiff's alleged hearing loss, the ALJ properly found that the plaintiff's allegation that he "d[idn]'t hear well" was inconsistent with other evidence: an audiogram revealed that the plaintiff retained 96%

16

speech recognition in both ears, (A.R. 231;) the plaintiff testified during the hearing that he could hear what his attorney asked him, (A.R. 34;) and no evidence suggested that the plaintiff had obtained hearing aids.

At step four, the ALJ correctly determined that the plaintiff was able to perform his past jobs as a cleaner or as a stocker/packager. (A.R. 20.) The plaintiff has the burden to show an inability to return to his past relevant work. Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003). The ALJ noted that the plaintiff's condition had not deteriorated after he was laid off in 2010, and he had no exertional limitations that prevented him from performing either of his previous jobs. (A.R. 21.) Regardless of the plaintiff's nonexertional limitations, Dr. Broska and Dr. Andrews opined that the plaintiff could perform simple and even complex tasks independently. (A.R. 203, 223.) The ALJ thus properly concluded that the plaintiff was able to return to his previous jobs, both of which were categorized by the Department of Labor as "unskilled" and required no more than the ability to perform simple tasks. See Department of Labor Dictionary of Occupational Titles 381.687-018, 920.687-014 (4th ed. 1991); (A.R. 21.)

The ALJ's determination that the plaintiff was able to perform his past relevant work shows that the plaintiff was not disabled. The ALJ nonetheless continued to step five and found

17

that the plaintiff was also able to perform a significant number of other jobs existing in the national economy. (A.R. 21.) That finding was supported by substantial evidence.

If "an individual has a large potential occupational base, he or she would ordinarily not be found disabled in the absence of extreme adversities in age, education, and work experience." Social Security Ruling 85-15, 1985 WL 56857, at *3 (January 1, 1985). The ALJ, based on the fact that the plaintiff had a RFC with no exertional limitations and that his non-exertional limitations had little effect on his ability to perform unskilled work at all exertional levels, correctly found that there are other jobs that exist in significant number in the national economy that the plaintiff was able to perform. (A.R. 21.) See 20 C.F.R. Pt. 404, Subpt. P, Appx. 2, § 202.00(a) ("Approximately 1,600 separate sedentary and light unskilled occupations can be identified in eight broad occupational categories, each occupation representing numerous jobs in the national economy."). The ALJ then correctly noted that the plaintiff was not disabled because he faced no extreme adversities in age, education, or work experience. The plaintiff was young (within the 18-49 age range), had a high school education, and had no job skills transferability problems because his past jobs were both unskilled. (A.R. 21.)

In sum, there was substantial evidence in the record as a whole to support the Commissioner's determination that the plaintiff was not disabled and was not entitled to DIB and SSI benefits for the period at issue in this case.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit. For the foregoing reasons, the defendant's motion for judgment on the pleadings is **granted**, and the Commissioner's decision is **affirmed**. The Clerk is directed to enter judgment and to close this case.

**SO ORDERED.**

**Dated:    New York, New York**
         **July 22, 2015**                                      /s/
                                                  **John G. Koeltl**
                                      **United States District Judge**